UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 3:16-CV-033 RLM |
| NURSE WEST, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Christopher L. Scruggs, who is representing himself, was granted leave to proceed on an Eighth Amendment claim against Nurse Janice West and Officer Eric Miller. Mr. Scruggs alleges that Nurse West used excessive force against him when she closed his hand in a cuff port on October 24, 2015, and Officer Miller failed to intervene in Nurse West's use of excessive force. The defendants have each moved for summary judgment, asserting that Nurse West didn't use excessive force. Because there are genuine disputes about whether Nurse West used excessive force, the court denies the motions.

*Facts*

Mr. Scruggs and the defendants disagree about many particulars, but the basic facts aren't in dispute. Mr. Scruggs was an inmate at the Westville Control Unit, the segregation unit of a maximum security correctional facility on October 24, 2015. He was suffering from tooth pain and had been prescribed Tylenol, to

be taken every six hours on an as needed basis. Nurse West and Officer Miller arrived at Mr. Scruggs' cell late in the evening to hand out medications. Nurse West gave Mr. Scruggs some of his medications but didn't give him the Tylenol because it had not yet been six hours since his last dose. Officer Miller and Nurse West returned to Mr. Scruggs cell about 90 minutes to see whether he wanted the next dose of Tylenol. What happened during this second visit is largely disputed.

The defendants claim that Nurse West didn't have a medication cup when she got to Mr. Scruggs's cell, she so she planned to pour the Tylenol into his hand. Officer Miller unlocked and opened the cuff port.[1] Nurse West asked Mr. Scruggs if he wanted the Tylenol, since it was only to be given if requested. Mr. Scruggs became belligerent, began using profanity and demanded his medication. Nurse West became concerned with Mr. Scruggs's conduct and told him to put his hand back inside the cuff port, but he refused to do so. Believing that Mr. Scruggs was attempting to hold the cuff port hostage[2], she began to guide the cuff port closed, but never completely closed it on his hand. Nurse West says she never applied pressure on the tray flap. Instead, she claims to have used reasonable force in starting to guide the cuff port closed to gain compliance because Mr. Scruggs refused to remove his arm from the cuff port. Officer Miller's report backs up that

---

[1]The cuff port on the cell door contains a flap that opens outward from the top down, so that when it is open the door becomes a tray at the bottom of the opening. ECF 108-1 at 3.

[2]"Holding the cuff port hostage," means inmates keep their arms or hands out so that the flap cannot be closed. ECF 108-1 at 3.

2

account by stating, "The cuff port did not completely close on offender Scruggs hand and his hand was not caught however offender Scruggs made a sound as if it did and stated that his hand was injured in the cuff port which it was not." Nurse West ultimately relented and gave Mr. Scruggs his Tylenol by pouring it into his hand. Nurse West didn't see Mr. Scruggs receive any injury while she was at his cell. She has seen a photograph taken shortly after their encounter, showing Mr. Scruggs' right index finder with a small amount of bleeding on the cuticle. She thinks the cuff port might have scratched his finger.

Mr. Scruggs gives a far different account. He claims that Nurse West was upset about having to make a second trip to his cell. Mr. Scruggs agrees that the two got into a verbal altercation about the Tylenol, but disputes that Nurse West ever told him to put his hand inside the cuff port. He asserts that during the argument he demanded his Tylenol by saying, "Come on with my meds, lady." As soon as he said that, Nurse West slammed the cuff port closed onto his hand, breaking his right pinky finger and injuring his right index finger. Mr. Scruggs claims she closed the cuff port onto his hand just to cause him harm.

The defendants submitted a surveillance video[3] of the incident, which might help resolve the disputed facts. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) (noting that facts must be viewed in light of videotape that recorded the incident).

---

[3]Mr. Scruggs contends that the video has been altered, but provides no supporting evidence. To the contrary, the undisputed evidence in the record establishes that it was downloaded directly from the prison's server, which the IDOC maintains in the ordinary course of business.

3

Unfortunately, it's hard to tell from the video exactly what took place between Nurse West and Mr. Scruggs because there is no audio recorded and Officer Miller is standing in front of the cuff port, obstructing the camera's view most of the time. The video shows Officer Miller and Nurse West walk up to Mr. Scruggs's cell. Officer Miller unlocks and opens the cuff port. As Officer Miller stands to the side, Nurse West engages in a conversation with Mr. Scruggs. The video appears to show Nurse West step toward the cell door and start to close the cuff port. Nurse West steps away from the cuff port about ten seconds later. She continues to speak with Mr. Scruggs. Mr. Scruggs then places his hand out of the cuff port and Nurse West places the medication into Mr. Scruggs's hand. Mr. Scruggs then brings his hand back into the cell and Nurse West closes the cuff port. Officer Miller locks the cuff port and they walk away from the cell.

Westville has no record that Mr. Scruggs submitted any Request for Health Care forms for his hand until nearly two months after this incident. When Mr. Scruggs finally submitted a health care request form to complain about his hand, he merely stated, "My hand has been hurting, well not really hurting, but it has an irritation to it, like a bad itchiness that won't go away no matter what I do." But Mr. Scruggs claims to have submitted two earlier health care request forms about his hand shortly after the incident, and those went ignored. In his deposition, Mr. Scruggs claimed that as a result of the cuff port being closed onto his hand, his finger was bleeding, his knuckle was fractured and his hand was

4

swollen and in pain. In his affidavit, he further claims Nurse West broke his pinky by closing it in the cuff port. In support of that assertion, he has provided an April 3, 2018, x-ray performed on his right hand which showed, "residual deformity from remote fifth metacarpal fracture."[4]

*Summary Judgment Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).

---

[4]In their traverse, the defendants argue that the x-ray does not show that the cuff port caused the "remote fracture" in October 2015. ECF 170 at 2. While this is true, the defendants do not present any evidence which would rule out that possibility either.

*Existence of a Genuine Issue of Material Fact*

Under the Eighth Amendment, the "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." <u>Hendrickson v. Cooper, 589 F.3d 887, 890</u> (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. <u>Id.</u> Conduct involving minimal force doesn't violate the Eighth Amendment. <u>Hudson v. McMillan</u>, 503 U.S. 1, 7 (1992). "Even if a use of force serves no good-faith disciplinary purpose, the force may be so 'de minimis' that it does not violate the Eighth Amendment." <u>Hendrickson v. Cooper</u>, 589 F.3d at 890.

The defendants say Nurse West used a reasonable, de minimis amount of force in guiding the cuff port closed to gain compliance because Mr. Scruggs refused to remove his arm from the cuff port. If the defendants' version of events is accurate, there would be no viable excessive force claim. <u>See e.g. Outlaw v. Newkirk</u>, 259 F.3d 833, 837 (7th Cir. 2001) (noting that there is no excessive force when official has legitimate security reason to close cuff port and no more than de minimis force was used). But at this stage, the court must construe all facts in the light most favorable to Mr. Scruggs and draw all reasonable inferences in

his favor. Ogden v. Atterholt, 606 F.3d at 358. Under these standards, Mr. Scruggs is entitled to a trial.

Whether Nurse West used de minimis force in closing the cuff port is genuinely disputed. A jury could find that the force Nurse West used to close the cuff port onto Mr. Scruggs' hand was more than de minimis. What Mr. Scruggs swears happened — slamming the cuff port onto Mr. Scruggs's hand resulting in injury — amounts to more than a de minimis use of force. Cf. Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994) (noting that a de minimis use of force is not intended to cause pain or injury to the inmate). Likewise, whether Nurse West closed the cuff port maliciously or in a good faith effort to restore order is yet another genuine dispute. A jury accepting the facts in a light most favorable to Mr. Scruggs could find that Nurse West's use of force was "malicious" because she closed the cuff port on Mr. Scruggs hand for the purpose of causing harm. Summary judgment can't resolve this case.

The defendants also argue that Mr. Scruggs's version of events is simply implausible in light of the record. The court disagrees. Whether Mr. Scruggs's version of events is true is a matter of witness credibility, and to make a credibility determination without a trial would amount to an improper weighing of the evidence. Alicea v. Thomas, 815 F.3d 283 (7th Cir. 2016); Washington v. Haupert, 481 F.3d 543, 550 (7th Cir. 2007); Wilson v. Williams, 997 F.2d 348, 350 (7th Cir. 1993).

As a final matter, Mr. Scruggs has filed several motions, apparently out of concern that the defendants' motions for summary judgment would be granted. He filed a motion (ECF 173) seeking leave to file a sur-reply. He filed a motion (ECF 174) for a hearing on the motions for summary judgment. And he filed a document entitled, "Compound Motion," (ECF 175) in which he seeks various relief surrounding the video evidence submitted in this case. Because the court is denying the motions for summary judgment, each of Mr. Scruggs's motions are unnecessary at this point.

For these reasons, the motions for summary judgment (ECF 106, 133) are DENIED. Additionally, Mr. Scruggs' motion (ECF 173) to file a surreply, motion (ECF 174) for hearing and compound motion (ECF 175) are DENIED.

SO ORDERED on September 10, 2018

/s/Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT