UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

    Plaintiff,

    v.                       CAUSE NO.: 3:16-CV-33-RLM-MGG

NURSE WEST,

    Defendant.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed a motion for a new trial and to alter or amend judgment. "The court may, on motion, grant a new trial on all or some of the issues–and to any party– . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial may be granted when (1) a verdict is against the weight of the evidence, (2) damages are excessive, or (3) other reasons made the trial unfair to the moving party. Pickett v. Sheridan Health Care Ctr., 610 F.3d 434, 440 (7th Cir. 2010). In considering a motion for a new trial, the trial court must view the evidence in the light most favorable to the prevailing party, and issues of credibility and weight of the evidence are within the jury's purview. Carter v. Chicago Police Officers, 165 F.3d 1071, 1079 (7th Cir. 1998).

A motion under Federal Rule of Civil Procedure 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th

Cir. 1995). Rule 59(e) motions don't give a party the opportunity to rehash old arguments or to present new arguments "that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). Federal Rule of Civil Procedure 60 authorizes the court to relieve a party from a final judgment based on: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; or . . . (6) any other reason that justifies relief."

Mr. Scruggs asserted an Eighth Amendment claim of excessive force against Nurse West for closing his hand in the cuff port in October 2015 and against Officer Miller for failing to intervene. ECF 1. On October 16, 2019, the court held the final pretrial conference and heard oral arguments on pretrial motions. ECF 309. On October 21, the court entered its order on the pretrial motions. ECF 310. The court conducted the jury trial from October 23 to October 25. At trial, Mr. Scruggs called himself, Officer Miller, and Nurse West as witnesses. At end of Mr. Scruggs's case, the court entered a directed verdict in favor of Officer Miller and against Mr. Scruggs on the basis that Mr. Scruggs had presented no evidence to support his claims against Officer Miller. Nurse West called Corey McKinney, DeAngela Lewis, and Dr. Andrew Liaw as witnesses. After the close of evidence, the jury returned a verdict in favor of Nurse West and against Mr. Scruggs.

Mr. Scruggs argues that the jury verdict was against the weight of the evidence. To prevail on this argument, he "must demonstrate that no rational jury could have rendered a verdict against him." Galvan v. Norberg, 678 F.3d 581, 589 (7th Cir. 2012) "[N]ew trials granted because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Latino v. Kaizer, 58 F.3d 310, 315 (7th Cir. 1995). Mr. Scruggs called Officer Miller and Nurse West as witnesses. During their testimony, the defendants characterized the physical interactions during the cuff port incident as minimal contact rather than excessive force. They presented a surveillance video recording of the incident, which was consistent with their testimony. They also presented evidence, including medical records and X-rays, to discredit Mr. Scruggs's allegation that Nurse West had broken his hand. The evidence against the jury verdict consisted solely of Mr. Scruggs's testimony and his own recorded statements. The jury was free to disbelieve Mr. Scruggs. On this evidentiary record, the court concludes that jury's verdict in favor of Nurse West and against Mr. Scruggs was rational, and Mr. Scruggs will not be granted a new trial on this basis.

Mr. Scruggs argues that the court shouldn't have granted the motion for directed verdict in favor of Officer Miller. Federal Rule of Civil Procedure 50(a) allows the court to grant such motions "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." In

other words, Mr. Scruggs had to present evidence to support his claim against Officer Miller to avoid a direct verdict. Mr. Scruggs maintains that "the defense already told the jury that Scruggs claimed his hand was pinned in the cuff port for the better part of a minute, thus there was no need to repeat it himself." To the extent Mr. Scruggs is referring to defense counsel, opening statements are not evidence. To the extent he refers to the defendants' testimony, the defendants may have acknowledged their general awareness of Mr. Scruggs's allegations, but expressly denied that they were true. Mr. Scruggs hasn't pointed to any evidence introduced at trial to support his claim against Officer Miller, so the court can't grant him relief on this basis.

Mr. Scruggs argues that the court let the defendants to commit perjury as they testified on the stand. Perjury is defined as "[t]he act or an instance of a person's deliberately making material false or misleading statements while under oath." BLACK'S LAW DICTIONARY (11th ed. 2019). To support his contention that their testimony was false, Mr. Scruggs offers only his own statements as evidence, but he makes no effort to explain why he believes the court should credit his uncorroborated statements against the decision of the jury and over the defendants' statements, which were consistent with other evidence, including a video recording and medical records. Moreover, even if the court believed that the defendants offered false testimony, Mr. Scruggs offers no reason to believe that they did so intentionally. The court can't find that the defendants committed perjury at trial.

Mr. Scruggs argues that the court shouldn't have allowed the defendants to introduce the video recording because it was edited to remove the portions showing excessive force. He argues that Corey McKinney offered false testimony about the video surveillance system and the authenticity of the video recording admitted at trial. He argues that Troy Cambe should have been called to testify on these issues instead, but Mr. Scruggs made no effort to arrange for his appearance at trial. To support the contention that McKinney's testimony was false and that the video recording was altered, he offers his statements that the recording does not match his recollection, but, again, he offers no explanation as to why the court should credit his statements and memory over the defendants' contrary testimony (which has the virtue of being entirely consistent with the video recording). He also maintains that he showed the court that he was prevented from accessing a hidden video recording, but he didn't make such a showing. Rather, the court observed that the courtroom computer did not allow Mr. Scruggs to select the option in the Windows Explorer window to show hidden files on the disk containing the video recording. This could be explained by any number of technological considerations, and that Windows Explorer provides the option to display any file folders that might be concealed doesn't by itself suggest the existence of any hidden files on the disk, much less evidence of concealed evidence or tampering.

Relatedly, Mr. Scruggs argues that he wasn't allowed to complete discovery to obtain the unedited video recording. He argues that he should have been appointed counsel and an expert to assist him in obtaining the unedited video

recording and in showing that the defendants had tampered with it. He also argues that he should have been appointed counsel because he was mentally incompetent to represent himself at trial. He argues that he should have been allowed to present evidence that the Department of Correction, medical staff, and their counsel maintain an unwritten policy of conspiring to cover up violations of inmates' constitutional rights. The court has already addressed these issues at length (ECF 238, ECF 244, ECF 310) and needn't revisit them here.

Mr. Scruggs argues that he should be granted a new trial because correctional staff deprived him of sleep during the trial. Because Mr. Scruggs did not raise this issue at trial, the court will not further consider it here, except to note that, during trial, it did not observe any signs that Mr. Scruggs had been deprived of sleep.

Finally, Mr. Scruggs argues that he should be granted a new trial because he didn't receive the court's order on pretrial motions until the day of trial, which prohibited him from presenting evidence on the unwritten cover up policy as he had planned. It's unfortunate that Mr. Scruggs did not receive this order sooner, the court accommodated the need for Mr. Scruggs to revise his trial strategy by granting him the time he requested -- an additional ninety minutes -- to prepare after an hour long lunch break. Further, even if Mr. Scruggs was allowed to present evidence of the unwritten policy, he should have also been prepared to prove that the cuff port incident occurred as he had alleged. Indeed, his trial brief suggests that he had been prepared to do just that. ECF 288 at 4.

Mr. Scruggs had ample reason to suspect that he would not be allowed to present evidence based on his cover up theory even before he got the order. To start, in the order denying the motions for summary judgment, the court informed Mr. Scruggs the factual issues to be resolved at trial were related to Nurse West's conduct during the cuff port incident. ECF 177. In denying Mr. Scruggs' motion for sanctions, the court found that Mr. Scruggs's allegations of tampering and edited video were unpersuasive and had little evidentiary support. ECF 244. The court also provided Mr. Scruggs with an explanation of trial procedures, which outlined the court's expectations for trial and included the Federal Rules of Evidence that formed the legal basis for the exclusion. ECF 239. Additionally, the defendants moved for the exclusion of the evidence Mr. Scruggs intended to offer in support of this theory and engaged in oral argument on these issues at the final pretrial conference (ECF 301, ECF 304, ECF 309). Consequently, Mr. Scruggs had notice long before trial that there was a reasonable likelihood that the court would prohibit him from proceeding on the trial strategy presented in his pretrial filings. Mr. Scruggs could hope for a more favorable ruling, but couldn't reasonably be surprised by the ruling he got.

For these reasons, the court DENIES the motion for a new trial (ECF 331).

SO ORDERED on December 13, 2019

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT